**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| HAROLD B. MASON, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CASE No.: 1:12-CV-159 (WLS) |
| : | |
| CHARLES GEORGE, : | |
| KATHY BATSON, and : | |
| FLINT RIVERQUARIUM, : | |
| : | |
| Defendants. : | |
| : | |

**ORDER**

By Order dated October 16, 2013, the Court granted Defendants' Motion for Contempt and Sanctions (Doc. 69), finding that sanctions against Plaintiff Harold B. Mason were warranted pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) for his failure to comply with discovery. The Court is now ready to impose a sanctions award against Plaintiff. Before, however, the Court declares the amount of sanctions to be awarded, the Court feels compelled to recount this case's tortured procedural past so Plaintiff can make no claim that he has been treated inequitably.

**RELEVANT PROCEDURAL HISTORY**

Plaintiff filed his Complaint in the above-captioned matter on October 22, 2012, purportedly under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e, *et seq.*,[1] alleging race discrimination against Flint Riverquarium and its employees, Charles George and Kathy Batson. (Doc. 1.) Plaintiff's sole allegation is that Charles George "falsif[ied] write ups [sic] . . . to the detriment of future employment of

---

[1] Plaintiff has repeatedly disavowed any intent to proceed under Title VII of the Civil Rights Act of 1964. He put a line through the Title VII reference in the form Title VII complaint for this Court, writing in Civil Rights Act of 1991 instead. (Doc. 1.) The 1991 Act amended Title VII of the Civil Rights Act of 1964, however. Therefore, Plaintiff's Complaint, as the Court understands it, is a Title VII action.

1

[Plaintiff] with Kathy Batson agreeing with and permitting with the threat of being terminated." (*Id.*)

Before the commencement of discovery, Plaintiff filed a Motion for Summary Judgment. (Doc. 20.) The Court denied said motion on the grounds that it was premature because fact discovery had not yet commenced. (Doc. 22.) Another summary judgment motion was dismissed by the Court on February 11, 2013. (Doc. 25.) On February 22, 2013, Plaintiff filed a Motion for Injunction. (Doc. 26.) Therein, Plaintiff requested that the Court stop Flint RiverQuarium employees (Vickie Churchman and Vonda Handcock) from delaying payment of his paycheck and committing incorrect payroll deductions as retaliation. (*Id.*) Liberally construing Plaintiff's motion as a Title VII retaliation claim, the Court denied Plaintiff's Motion for Injunction on the basis that Plaintiff failed to demonstrate that the child-support deductions were retaliation and not lawful deductions done pursuant to a court order. (Doc. 38.) On May 29, 2013, Plaintiff responded to the Court's order denying his request for an injunction. (Doc. 39.) According to Plaintiff, "the matter was not about child support deductions that were made as retaliation by defendants." (*Id.* at 1.) Instead it was about "defendants having tampered with [time sheets]." (*Id.*) The Court construed Plaintiff's response as a Motion for Reconsideration and denied the same. (Doc. 52.)

The discovery issues in this case began on May 17, 2013, with the filing of Defendants' Motion to Compel. (Doc. 33.) Therein, Defendants sought to enlist the Court's help with compelling complete and adequate discovery responses from Plaintiff. (*See generally id.*) On May 21, 2013, Plaintiff responded to Defendants' motion, asserting that his answers were complete in view of his interpretation of Federal Rules of Evidence 403 (relevance) and 404 (character evidence). (Doc. 37.)

2

On June 14, 2013, Plaintiff filed his own Motions to Compel Production of Documents and Answers to Interrogatories (Docs. 47-48) and a Motion to Compel Alternative Dispute Resolution (Doc. 49). The deadline for Defendants' discovery responses was June 13, 2013. Without consulting with Defendants to determine if the responses were en route and without satisfying the good-faith consultation requirement of Rule 37(a)(1), Plaintiff filed his motions to compel. Defendants filed their response to these respective motions on July 1, 2013. (Doc. 53.) Defendants' response noted that Defendants emailed their discovery responses to Plaintiff on June 13, 2013. (*Id.* at 1-2.) The documents submitted in response to Plaintiff's Request for Production were sent via regular mail on June 13, 2013. (*Id.* at 2.) As for Plaintiff's Motion to Compel ADR, Plaintiff stated that he submitted a mediation settlement proposal to Defendants on June 12, 2013. (Doc. 49.) Plaintiff then went on to state that if "Defendants attorney chooses to further unnecessarily delay and complicate matters then [he (Plaintiff)] will have only two alternatives: 1) [f]ile for default judgment against defendants and 2) [f]ile for judgment based upon acts committed individually demonstrating intention upon consideration of the words, conduct, demeanor and motive." Plaintiff's Motion to Compel ADR was later denied by the Court for failure to show good cause or to cite relevant law or rules in support of such a motion. (Doc. 75.)

On August 7, 2013, the Court held a hearing on all the motions to compel. During the hearing, Plaintiff stated that he was withdrawing his motion to compel as all documents requested from Defendants had been provided to him. (Doc. 67.) The Court then heard from the parties regarding Plaintiff's alleged failure to respond to discovery. Plaintiff was informed that he would be given fourteen days (August 21, 2013) to supplement his discovery responses. (Doc. 68.) The Court informed Plaintiff that his

3

failure to respond properly and adequately to discovery could result in the imposition of sanctions. (*Id.*) Plaintiff was also directed to give facts and answers supporting his claims, and not opinions where questions seek facts. Not only were these directives memorialized in a written order entered after the hearing, but Plaintiff gave no indication *during the hearing* that he misunderstood what was being requested of him.

On August 24, 2013, Defendants filed a Motion for Contempt and Sanctions Pursuant to Rule 37. (Doc. 69.) In moving for sanctions, Defendants informed the Court that, on August 21, 2013, Plaintiff emailed counsel for Defendants stating that he was "expecting [counsel] to redress the questions again to move forward in that this is the dead line [sic] date of 14 days as it stands I will redress/redress the interogatories [sic] from my first responses." (Doc. 69-2 at 1.) Defendants informed Plaintiff that the Court did not require it to reissue its discovery requests. (*Id.* at 2.) Nevertheless, Defendants granted Plaintiff an extension until August 23, 2013, to submit his responses. Plaintiff did not take advantage of this extension. Instead, Plaintiff submitted a Response in Opposition to Defendants' Motion for Contempt. (Doc. 70.) Therein, Plaintiff stated that Defendants were "aware that the deadline for finalizing Discovery has been moved until October 21, 2013." (*Id.* at 1.)

On October 16, 2013, the Court granted Defendants' Motion for Contempt and Sanctions. (Doc. 73.) The Court noted that, despite the fact that the discovery completion deadline was reset for October 21, 2013, "it was made very clear to Plaintiff, both at the hearing and by written order, that *his* deadline to supplement his discovery responses was **not later than fourteen days** after the hearing." (*Id.* at 2) (emphasis in original). The Court also pointed out that it did not direct Defendants to "rephrase questions," as asserted by Plaintiff. (*Id.*) Thus, the Court concluded that Plaintiff chose

4

to disregard the Court's discovery directives. Because of this disregard, the Court concluded that Plaintiff would be precluded from submitting any additional information to Defendants in support of his discrimination claims. (*Id.* at 3-4.) The Court also stated that, pursuant to Rule 37(a)(5)(A), Defendants would be entitled to fees absent one of Rule 37(a)(5)(A)'s recognized exceptions. Accordingly, the Court gave Plaintiff "an opportunity to be heard," giving him two weeks to submit a written memorandum addressing why a fee award is not warranted. (*Id.* at 4.)

On October 25, 2013, Plaintiff submitted the requested response. (Doc. 77.) One would think that, by this time, Plaintiff would be prepared to fall on the proverbial sword and convince the Court that he never intentionally sought to disregard Court directives. Not Mr. Mason. Instead, Plaintiff asserted that he "has been more than cooperative" and has "in fact respond[ed] to the court's Order by objection in layman terminology and submitted said rules in support of [discovery responses]." (*Id.* at 1-2.) This is not true, however, as attachments to Plaintiff's response indicate that he did not submit his supplemental responses to discovery until September 20, 2013, well after the August 21, 2013 deadline set forth by the Court. (Doc. 77-2 at 1.) Plaintiff also implied, for the first time, that the action for attorney's fees should be applied to Defendants because they have "not produced all of documents and/or answered all interrogatories as requested by plaintiff." (*Id.* at 2.) Finally, Plaintiff closed his response by stating that "[s]anctions should be revoked as offsetting and reserved for trial purpose based upon defendants and [counsel's] intent to hamper [him] from discoverable material and/or witnesses." (*Id.* at 3.)

On November 18, 2013, the Court informed Plaintiff that it found his response in opposition to sanctions to be insufficient. (Doc. 79.) Per the Court, Plaintiff's September

5

20, 2013 submission of his discovery responses was inexcusably untimely. (*Id.* at 2.) The Court also noted that Plaintiff's response was devoid of any showing that his failure to respond in a timely fashion was "substantially justified" or that "other circumstances make an award of expenses unjust." (*Id.*) Thus, the Court concluded that Defendants are entitled to fees. The Court then ordered Defendants to file a detailed account of the expenses incurred in moving to compel Plaintiff's discovery responses and gave Plaintiff an opportunity to file a response, if any, to the accounting.

On November 25, 2013, Plaintiff filed a document styled "Response Rebuttal to Defendant's Response to Plaintiff's Memorandum Contesting Sanction Fees." (Doc. 80.) Again, exhibiting no apparent regret for the discovery failures identified by the Court in its prior orders, Plaintiff reiterated his belief that if there has been any noncompliance with discovery, it involves Defendants and not him. (*See generally id.*) Notably, Plaintiff offered no "rebuttal" to the Court's conclusion that he failed to timely submit his discovery responses in compliance with the Court's orders.

On November 25, 2013, Defendants requested fees in the amount of $9,823.00. (Doc. 81.) With such a large amount at issue, the Court was quite sure that Plaintiff would finally submit a spirited opposition to a sanctions award, one that would have addressed his role in the discovery dispute. But Plaintiff is nothing if not consistent. On December 2, 2013, Plaintiff filed a "Response Opposition to Defendants [sic] Motion for Sanctions and Cost Assessments" wherein which he stated "the defendants and [their counsel] did in fact willfully obstruct Discovery in not giving all information and documents." (Doc. 83.) Per Plaintiff, "[w]hereby sanctions are unwarranted and should in fact allow plaintiff to file Motion for Sanctions against [defense counsel] and Defendants for obstructing justice in the nonproduction of such documents." (*Id.* at 2.)

This response was similarly devoid of any compelling arguments in opposition to a sanctions award.

Accordingly, the Court concludes that the briefing regarding Defendants' sanctions has now closed, and the matter of the amount to be awarded is ripe for the Court's review.

## **DISCUSSION**

In determining the appropriate amount of an award for attorney's fees, the Court multiplies the number of hours reasonably expended on a case by the reasonable or customary hourly rate. This amount, the "lodestar," may then be adjusted upward or downward in light of the factors identified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).[2] The Court in *Blum v. Stenson*, 465 U.S. 886 (1984), held that most of the *Johnson* factors[3] will ordinarily be reflected in the lodestar itself, for example, time and rate, rather than in an adjustment of the lodestar. Determination of a reasonable fee necessarily requires that counsel for the prevailing party exclude from a fee request "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee

---

[2] The Eleventh Circuit has adopted as binding precedent all decisions issued by the former Fifth Circuit prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc).
[3] Determination of a reasonable fee is based on consideration of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):
  1. The time and labor expended;
  2. The novelty and difficulty of the questions raised;
  3. The skill required to properly perform the legal services rendered;
  4. The customary fee for like work;
  5. The attorney's opportunity costs in pressing the instant litigation;
  6. The fee is contingent or fixed;
  7. The time limitations imposed by the client or circumstances;
  8. The amount in controversy and the results obtained;
  9. The experience, reputation, and ability of the attorney;
  10. The undesirability of the case within the legal community in which the suit arose;
  11. The nature and length of the professional relationship between attorney and client; and
  12. The attorneys' fees awards in similar cases.

submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Additionally, "[w]here the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations." *Young v. Int'l Paper Co.*, No. 10-179, 2012 WL 37647, at *4 (S.D. Ala. Jan. 6, 2012) (citing *Norman v. Housing Auth.*, 836 F.2d 1292, 1299 (11th Cir. 1988)). With these standards in mind, the Court will determine what the fee award should be.

Defendants have requested attorney's fees in the amount of $9,823 (41.80 hours at a rate of $235/hour). Defendants' counsel, C. Jason Willcox, states that he is a partner in the law firm of Moore Clarke DuVall & Rodgers, P.C., and has been in practice for 16 years. (Doc. 81 ¶¶ 2-3.) Per Mr. Willcox, an hourly rate of $235 is "reasonable" based on his knowledge of "billing rates of attorneys of similar experience with similar firms." (*Id.* ¶ 15.) Mr. Willcox also states that the 41.80 hours billed were "reasonable and necessary in order to properly represent Defendants, Charles George, Kathy Batson and Flint RiverQuarium." (*Id.* ¶ 16.)

A.    **Reasonable Hourly Rate**

The Court measures the reasonable hourly rate by "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. The burden to prove a reasonable hourly rate is by no means a light one. Thus, "[t]he party seeking attorney's fees bears the burden of producing 'satisfactory evidence that the requested rate is in line with prevailing market rates.'" *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (additional citations omitted). Importantly, an affidavit from the attorney performing the work does not constitute "satisfactory evidence." *Id.*

In this case, Mr. Willcox has failed to include any affidavits from any other local attorneys to support his request for a $235 hourly rate. The Court knows that Mr. Willcox is familiar with his duty to provide evidence to support the rate requested, as he has made such a proffer as counsel in another case. *See B & F Sys., Inc. v. LeBlanc*, No. 7:07-cv-192, 2012 WL 2529191, at *10 (M.D. Ga. June 29, 2012). Nevertheless, because the Court is familiar with prevailing rates in the Albany, Georgia market, the Court concludes that a rate of $235 is reasonable for Mr. Willcox's credentials and experience.

**B.    Reasonable Hours Expended**

After reviewing the time entries, though the $235 requested hourly rate is reasonable, the Court concludes that the 41.80 hours requested are, however, not. At the outset, the Court notes that while it does not dispute that Plaintiff has been unnecessarily recalcitrant for the duration of this case, the issues raised in connection with Defendants' Motion to Compel were neither complex nor research-intensive. They merely involved Plaintiff refusing to comply as directed or filing documents wherein which he lodged unfounded complaints against Defendants. While there is no excuse for these litigation tactics, they do not justify the Court awarding Defendants nearly $10,000 in fees to combat these tactics.

To demonstrate, Defendants request $1,739 (7.40 hours x $235) in fees incurred "research[ing], prepar[ing] and finaliz[ing] Defendants' response to Plaintiff's Motion to Compel." (Doc. 81 at 6, entry 7/1/13; *see* Doc. 53.) First, Defendants knew that Plaintiff's Motion to Compel likely arose out of the fact that Plaintiff had yet to receive Defendants' discovery responses since they were mailed on June 13, 2013, and Plaintiff's Motion to Compel was filed on June 14, 2013. Thus, there was no reason to spend roughly 8 hours researching, preparing and finalizing a robust response to Plaintiff's Motion. In fact, it is

9

possible that a mere phone call to Plaintiff to discuss his Motion to Compel might have resolved the issue without a formal response brief. Second, as noted by Defendants themselves in their response, Plaintiff's Motion to Compel did not identify any specific discovery-response deficiencies. As such, Defendants did not have to spend time in their response extensively defending individual discovery responses, a task that is usually the most time-consuming part of responding to a motion to compel. Finally, Defendants' response to Plaintiff's Motion to Compel numbers only five and a half pages and contains only a few citations to well-settled law. On its face, the response brief does not reflect a document that should have required eight hours of work, especially not for an attorney with Mr. Willcox's years of experience.

Defendants' Motion to Compel raises some "reasonableness" concerns as well. Per the bill, Mr. Willcox logged 7.6 hours researching, preparing, revising, and finalizing Defendants' Motion to Compel. (Doc. 81 at 5, entries 5/8, 5/9, 5/13, and 5/16/13.) A review of the Motion, however, reflects that each of the articulated grounds underlying the Motion to Compel were just brief responses to Plaintiff's largely meritless objections. In fact, in most of the "grounds," Defendants simply stated that Plaintiff's objections were unsupported and that his responses were evasive and deliberatively inadequate. Defendants were not required to marshal any case law in support of their objections or navigate any complex legal issues involving discovery. Accordingly, the Court finds that while the Memorandum in Support of the Motion to Compel is lengthy, numbering 25 pages, it did not require much compensable analysis.

The Court also points to the 8.2 total hours spent researching, preparing, and attending the hearing on the Motion to Compel to demonstrate that the hours expended have not been shown to be reasonable. (*See* Doc. 81 at 6, entries 8/5 and 8/7/13.) The

hearing itself took 54 minutes, according to the Court Deputy's minute entry. (Doc. 67.) The Courthouse is located a mere 12 minutes away from Mr. Willcox's firm, thus meaning that less than 30 minutes of those 8.2 hours was spent on travel time. Therefore, deducting the duration of the hearing and travel time from the 8.2. hours reported, this means that an estimated 6.7 hours was spent preparing for the hearing on Defendants' Motion to Compel. This Court is troubled by this time expenditure for a few reasons. First, at the hearing, Mr. Willcox would have only had to focus on the issues that he already outlined in his Motion to Compel. Additionally, while the Court intends no disrespect toward *pro se* plaintiffs generally, Plaintiff Mason's objections (giving rise to the Motion to Compel) were by no means legally sound nor should they have required much preparation and research to combat. Simply put, preparing to defend an already drafted motion to compel against a *pro se* plaintiff relying on shaky evidentiary grounds should not take an experienced, competent attorney 6.7 hours.

Finally, the August 24, 2013 billing entry involving Defendants' preparation of its Motion for Contempt and Sanctions also demonstrates why the Court declines to accept 41.80 as a "reasonable" amount of hours. Mr. Willcox stated that he expended 4.40 hours preparing the contempt motion and accompanying memorandum and filing the same with the Court. (Doc. 81 at 6.) Defendants' sanctions motion merely recounted quite a bit of the procedural history already documented by Defendants in their initial Motion to Compel. (*Compare* Doc. 69-1 *with* Doc. 34.) As for the law relating to sanctions, Defendants reproduced the text of Rule 37 and cited some case law (again, that which is well-settled), including a number of block quotes, regarding bad-faith sanctions. On balance, the drafting and subsequent filing of Defendants' Motion for Sanctions does not appear to have necessitated almost five hours of work, from the

undersigned's perspective. Moreover, Mr. Willcox has submitted time entries for the work he spent preparing a Reply in Support of Defendants' Motion for Contempt and Sanctions. (*See* Doc. 81 at 7, entries 9/16 and 9/24/13.) This Reply was, however, disregarded by the Court because it was untimely. Mr. Willcox should not be compensated for work not submitted according to the briefing deadline.

Stated simply, 42 hours to obtain more adequate discovery responses from *this pro se* plaintiff in *this* particular Title VII case just does not meet the reasonableness test. The discovery issues involved were about noncompliance and Plaintiff's lack of understanding about the law, not complexity and in-depth legal analysis. Thus, the Court thinks that the appropriate thing to do would be to conclude that only half of the hours reported constitute "hours reasonably expended." The Court believes that Defendants could have pursued Plaintiff's discovery compliance in 21 hours, including drafting their "good faith" letter, motion to compel, response in opposition to Plaintiff's motion to compel, and motion for sanctions, and preparing and attending the hearing on the motions to compel. Therefore, the Court finds that Defendants are entitled to attorney's fees in the amount of $4,935 (21 hours x $235). Plaintiff is **ORDERED**, as a sanction, to pay $4,935 in attorney's fees to counsel for Defendant **not later than twenty-one (21) days** from the date of entry of this Order.

**SO ORDERED**, this   9th   day of December 2013.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**