**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| HAROLD B. MASON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE No.: 1:12-CV-159 (WLS) |
| | : | |
| CHARLES GEORGE, KATHY | : | |
| BATSON, and | : | |
| FLINT RIVERQUARIUM, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Presently pending before the Court is Defendants Motion for Summary Judgment (Doc. 89). For the following reasons, Defendants' Motion for Summary Judgment (Doc. 89) is **GRANTED**.

## I.    PROCEDURAL HISTORY

Plaintiff filed his Complaint in the above-captioned matter on October 22, 2012, purportedly under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e, *et seq.*,[1] alleging race discrimination against Charles George and Kathy Batson, employees of the Flint RiverQuarium. (Doc. 1.) Plaintiff's alleged in his initial complaint that his direct supervisor, Charles George, "falsif[ied] write ups [sic] . . . to the detriment of future employment of [Plaintiff] with Kathy Batson agreeing with and

---

[1] Plaintiff has repeatedly disavowed any intent to proceed under Title VII of the Civil Rights Act of 1964. He put a line through the Title VII reference in the form Title VII complaint for this Court, writing in Civil Rights Act of 1991 instead. (Doc. 1.) The 1991 Act amended Title VII of the Civil Rights Act of 1964, however. Therefore, Plaintiff's Complaint, as the Court understands it, is a Title VII action.

permitting with the threat of being terminated." (*Id.*) Plaintiff alleged that George's actions present a *prima facie* case of discrimination and harassment on the basis of age, gender and race. (Doc. 1-2 at 5.) Plaintiff also alleged that he was subject to retaliation. (*Id.* at 9.) On April 24, 2013, Plaintiff filed an amendment to his original complaint that named Flint RiverQuarium as an additional defendant. (Doc. 32.) No additional substantive allegations were included in the amendment to Plaintiff's Complaint. (*See id.*)

On December 19, 2013, Defendants moved for summary judgment as to Plaintiff's Complaint. (Doc. 89.) According to Defendants, Plaintiff was employed by Defendant Flint RiverQuarium ("FRQ") as a part-time employee from November 8, 2010 until January 22, 2013. (Doc. 89-1 at 1.) Charles George was Plaintiff's direct supervisor in the Maintenance Department, and Kathy Batson was the Human Resources Director and Operations Manager for FRQ until November 2012. (*Id.*) Per Defendants, FRQ properly terminated Plaintiff's employment on January 22, 2013, for insubordination and altercations with employees, both in violation of FRQ's policy. In their Motion, Defendants first contend that Defendants Batson and George are entitled to summary judgment because individuals are not subject to suit under Title VII, only employers. Therefore, Defendants contend that Defendant FRQ is the only proper defendant but that Plaintiff's discrimination claim fails against FRQ for the following reasons: 1) Plaintiff's claim should be limited to the two write-ups he alleged in his Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC"); 2) Plaintiff has failed to establish a *prima facie* case of race discrimination

because write-ups do not constitute adverse employment action and Plaintiff failed to establish that he was disciplined differently than another similarly situated employee. Defendant FRQ further alleges that Plaintiff failed to establish a *prima facie* case of harassment because the conduct complained of was not sufficiently severe or pervasive and Plaintiff failed to report the alleged harassment. Defendant indicates that even if Plaintiff establishes a *prima facie* case of discriminatory discipline, Plaintiff's workplace violations constitute legitimate, nondiscriminatory reasons for the actions taken by Defendant FRQ. Per Defendant FRQ, Plaintiff has no evidence to demonstrate that these reasons are pretextual. To the extent Plaintiff tries to improperly allege a claim for retaliation, Defendant FRQ contends that this claim fails as well because Plaintiff was terminated for insubordination and altercations with FRQ employees.

On December 23, 2013, in accordance with the Court's procedures governing notice to *pro se* plaintiffs, the Court issued an order directing Plaintiff to file a response in opposition to Defendants' motion. (Doc. 91.) Plaintiff was noticed that he would be required to respond in opposition to Defendants' motion "with affirmative affidavits, depositions, documents[, and] rely with specificity upon evidence that is part of the record." (*Id.* at 1-2.) Plaintiff was also reminded that Local Rule 56 requires that, where a summary-judgment movant has properly filed a statement of undisputed facts, the respondent to a motion for summary judgment is required to respond to each of the movant's numbered material facts. (*Id.* at 2 n.1.) Finally, Plaintiff was noticed that "[i]f a party fails or refuses to file any materials in opposition to a motion for summary judgment, a **FINAL** judgment may be rendered against that party if otherwise

appropriate under the law. In that event, *there would be no trial or any further proceedings.*" (*Id.* at 2.)

On January 10, 2014, Plaintiff filed his response in opposition to Defendants' Motion for Summary Judgment. (Doc. 95.) He did not file a Responsive Statement of Facts or his own Statement of Disputed Facts. (*See generally* Docket.) He did, however, supplement his opposition brief with a number of exhibits. (Doc. 95-1.) In his Response, Plaintiff contends that: 1) he is a member of a protected group (African American and over the age of 40), 2) he was subject to unwelcome harassment based on his age and gender, 3) his age, gender, and race were contributing factors to his termination, and 4) his termination affected a term, condition, and or privilege of his employment. (Doc. 95 at 4.) As to the alleged harassment, Plaintiff alleges various instances of conduct he considers to be discriminatory. Plaintiff also contends that the filing of his complaint with the EEOC "escalated" the hostile work environment and "retaliation" from the staff and supervisors of FRQ. Thus, Plaintiff contends that Defendants are not entitled to summary judgment.

On January 24, 2014, Defendant submitted its Reply in Support of its Motion for Summary Judgment. (Doc. 96.) Therein, Defendants assert that Plaintiff abandoned all his claims by failing to contest the specific arguments made in Defendants' summary judgment motion. Defendants also contend that Plaintiff failed to submit any evidence to support his allegations of harassment.

The briefing for Defendant's Motion for Summary Judgment has now concluded, and the Court finds that Defendant's Motion for Summary Judgment is ripe for review.

## II.     Summary Judgment Standard

### A.     Federal Rule of Civil Procedure 56

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen*, 121 F.3d at 646. A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. *See Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 804 (1999); *Celotex*, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See id.* at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party

must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c).

### B.    Local Rule 56

Local Rule 56 requires the following from a respondent to a motion for summary judgment:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate. M.D. Ga. R. 56.

Here, Defendants properly filed a summary judgment along with a statement of undisputed facts, as is required by the Federal Rules of Civil Procedure and the Local Rules of this Court.  (*See* Docs. 89, 89-2.)  Plaintiff did not, however, file the required responsive statement of facts. Therefore, because Plaintiff failed to properly dispute Defendants' material facts as is required by the Local Rules, all of Defendants' material

facts provided in its Statement of Material Facts (Doc. 89-2) are deemed admitted by operation of Local Rule 56. Although the Court is nevertheless required to make an independent review of the record before deciding Defendant's Motion for Summary Judgment, *see United States v. Delbridge*, No. 1:06-cv-110, 2008 WL 1869867, at *3 (M.D. Ga. Feb. 22, 2008) (WLS) (concluding that Eleventh Circuit precedent does not allow a district court to grant a summary judgment based on default), it must be noted, however, that "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

Defendants have also argued that they are entitled to judgment as a matter of law as to all of Plaintiff's claims due to Plaintiff's failure to respond to individual arguments. (Doc. 96 at 5-6.) The rule is there is no default summary judgment. Even if Plaintiff completely failed to oppose Defendants' summary judgment, the Court would still be required to assess the merits of Defendants' motion *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) ("Even in an unopposed motion, the moving party still bears the burden of identifying "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact."); *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("Summary judgment is not automatically granted by virtue of a non-movant's silence. . . . Thus, the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the

motion.") There is one caveat, however. As noted by another district court, "a court is not obligated to read minds and cannot construct arguments or theories that a party has failed to raise in briefing." *SE Property Holdings, LLC v. Stradley*, No. 1:11-cv-219, 2012 WL 1605561, at *2 (S.D. Ala. May 7, 2012). Therefore, Plaintiff's failure to respond to certain arguments advanced by Defendants will serve no advantage to him during the Court's review of Defendants' Motion for Summary Judgment.

## III.   RELEVANT FACTUAL BACKGROUND

Plaintiff Harold B. Mason began working at the Flint RiverQuarium as a volunteer during Halloween 2010 and was hired and began working for FRQ as a part-time employee on November 8, 2010. (Doc. 89-2 ¶ 1.) Plaintiff worked in two departments: Maintenance and Events. (*Id.* ¶ 2.) Since April 12, 2005, Charles George has served as the Maintenance Department supervisor. (*Id.* ¶ 5.) Plaintiff reported directly to George and to Vicki Churchman in event set-up. (*Id.* ¶ 6.) From October 2008 to November 2012, Kathleen Batson was the Human Resources and Operations Manager for FRQ. (*Id.* ¶ 7.)

During his employment, Plaintiff received verbal coaching, oral reprimands, and written disciplinary actions from George for a variety of job performance issues and FRQ policy violations. (*Id.* ¶ 22.) FRQ states that Plaintiff's job duties, title, wage, hours and benefits of employment were not affected in any way by the verbal coaching, oral reprimands, or written discipline, nor were Plaintiff's hours of work changed in response to any disciplinary action, EEOC filing or the filing of Plaintiff's Title VII Complaint. (*Id.* ¶¶ 23-24.)

In January 2012, all part-time employees' hours were reduced due to continued revenue issues. (*Id.* ¶ 40.) Plaintiff was terminated in January 2013. The incident that led to his termination took place on January 12, 2013, and involved Plaintiff and Sherrell Lamar, the FRQ Guest Services Manager. (*Id.* ¶ 59.) Plaintiff reportedly slammed his hand on the concrete ledge, yelled and demanded his "damn paperwork" for a client event scheduled for the evening of January 12, 2013. (*Id.* ¶ 60.) Plaintiff then refused to accept direction from, or listen to, Lamar, and subsequently uttered that Lamar had "control issues," "low self-esteem," and commented about Lamar's husband. (*Id.*) After learning of the incident and reviewing the information obtained in the investigation by Lewallen and Vicki Churchman, FRQ determined that Plaintiff's January 12, 2013 actions warranted termination for insubordination and altercations with FRQ employees. (*Id.* ¶ 61.) Per FRQ, Plaintiff's job duties, responsibilities, and hours remained the same from Plaintiff's hiring in November 2010 to his termination in January 2013. (*Id.* ¶ 53.)

## IV.   DISCUSSION

### A.   Individual Liability under Title VII

Defendants first argue that Defendants Batson and George are entitled to summary judgment because they are individual employees and are therefore not subject to liability under Title VII. The Court agrees. "[A] Title VII claim may be brought against only the *employer* and not against an individual employee." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006). As such, FRQ is the only proper defendant to

Plaintiff's Title VII claims. Accordingly, summary judgment is granted in favor of Defendants Batson and George.

### B.   Discrimination Claim

#### 1.   Scope of Charge

The Court will first assess what discriminatory acts properly serve as the basis for Plaintiff's Title VII complaint. A plaintiff may not sue under Title VII unless he first exhausts administrative remedies by filing a timely charge of discrimination with the EEOC. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir.2001). "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Sec. Inc.,* 19 F.3d 586, 589 n.8 (11th Cir.), *cert. denied,* 513 U.S. 919 (1994) (*citing Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir.1970)). However, "the scope of the EEOC complaint should not be strictly interpreted." *Sanchez,* 431 F.2d at 465 (quoting *Baxter v. Savannah Sugar Refining Corp.,* 46 F.R.D. 56, 59 (S.D. Ga. 1968)). "The suit may include allegations of discrimination *reasonably related* to the allegations listed in the administrative charge, including new acts occurring during the pendency of the administrative charge." *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1409 (10th Cir. 1997) (emphasis added); *Turner v. Orr,* 804 F.2d 1223, 1226-1227 (11th Cir. 1986).

In his charge of Discrimination filed with the EEOC, Plaintiff stated: "On January 19, 2012, I was written-up [sic] and placed on 30 days probation. I was told by Charles George (White), Maintenance Supervisor, that I was written-up [sic] because I smelled of alcoholic beverage. I believe I have been discriminated against because of my race

[African American]." (Doc. 89-9 at 19.) Plaintiff also submitted to the EEOC a disciplinary form dated March 21, 2012, for a reprimand regarding failure to follow appropriate procedures for rental clients. (*Id.*at 15; Doc. 89-1 at 8.) Plaintiff executed his Charge on April 25, 2012. (Doc. 89-9 at 19.) FRQ contends that the Court's discrimination analysis under Title VII should therefore be limited to the two write-ups—January 19, 2012 and March 21, 2012—that Plaintiff submitted to the EEOC. (Doc. 89-1 at 9.) In his brief in opposition, Plaintiff states that "he was subject to unwelcome harassment" and terminated because of his age, race, and gender. (Doc. 95 at 4.) Plaintiff did not address FRQ's argument about the scope of his EEOC charge.

In his initial complaint filed on October 22, 2012, Plaintiff only checked the box labeled "race" when describing the kind of discrimination alleged. (Doc. 1.) Plaintiff did, however, mention age, gender, and race, in the "Memorandum in Support of Petition" attached to his Complaint. (Doc. 1-2 at 5.) Nevertheless, Plaintiff only mentioned race in his Charge with the EEOC and there have been no facts presented to this Court to reflect that Plaintiff mentioned gender or age to the EEOC or that these claims are "inextricably intertwined" with Plaintiff's complaints about race discrimination such that they could naturally extend from the investigation into his race claims. *See Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004). Thus, Plaintiff's age and gender discrimination claims have not been exhausted, and FRQ is entitled to judgment as a matter of law as to these claims.

As for the scope of Plaintiff's race-based discrimination claim, the Court concludes that it will consider Plaintiff's two write-ups *and* his termination. Plaintiff

filed his Charge with the EEOC on April 25, 2012. As noted above, the Court may consider allegations of discrimination "reasonably related" to the allegations in the Charge and "new acts occurring during the pendency of the administrative charge." *Aramburu*, 112 F.3d at 1409; *Turner*, 804 F.2d at 1226 (noting that the standard that has evolved in the Eleventh Circuit is one in which the scope of the judicial complaint is limited to the scope of the EEOC investigation, which can "encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the commission") (quoting *Sanchez*, 431 F.3d at 466). Because Plaintiff's termination followed the filing of EEOC Charge, the Court will consider allegations related to the January 12, 2013 termination.

### 2. *Prima Facie* Case

A Plaintiff seeking to prove a Title VII violation may do so through three generally accepted methods: 1) direct evidence of discriminatory intent, 2) circumstantial evidence satisfying the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or 3) statistical proof. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). A review of Plaintiff's submissions do not reflect that he has proffered any direct evidence of discriminatory intent directed towards him or any statistical proof supporting a finding of discrimination. Therefore, the Court will apply the *McDonnell Douglas* burden-shifting framework. Under this framework, in order to establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that he: 1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment action; and 4) can show that similarly

situated employees outside of his protected class were treated more favorably or was replaced by someone outside of her his/her protected class. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842 (11th Cir. 2000). If the claimant establishes a *prima facie* case of discrimination, this creates a presumption of discrimination, and the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action to rebut the presumption. *Standard*, 161 F.3d at 1331.

FRQ concedes that Plaintiff is a member of a protected class and that Plaintiff was qualified to perform the position but disputes that Plaintiff suffered an adverse employment action or was treated less favorably than similarly situated employees. (Doc. 89-1 at 11.) Per FRQ, because nothing materially adverse or punitive happened to Plaintiff because of the write-ups, and Plaintiff's job duties, title, wage, hours and benefits of employment were not affected, the write-ups were not adverse employment actions. Plaintiff contends that the write-ups and the "padded personnel file" were adverse because they "would only serve to mislead as well as disqualify [him] from that or any other position there as well other places of potential employment." (Doc. 1-2 at 6.) Per Plaintiff, the actions of Defendants were of the kind "that thwart[] other employment" and were "actions [that] gave distinct advantage and interfered with [his] ability to perform and/or train others as the case may be as an employee." (*Id.* at 7.)

"Not all conduct by an employer negatively affecting an employee constitutes adverse employment action. . . . To prove an adverse employment action . . . an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238-39 (11th Cir. 2001))

(emphasis in original). To prove an adverse employment action . . . an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Id.* at 1239 (emphasis in original). Importantly, the "employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

Here, Plaintiff cannot show that his write-ups constitute adverse employment action under the *Davis* standard. As noted by FRQ, there is no evidence that anything tangible happened to Plaintiff as a result of the write-ups, i.e., change in job duties, title, wage, hours, or benefits. Though Plaintiff contends that the write-ups could disqualify him from employment at FRQ, he presents no evidence that the write-ups materially affected his position at FRQ while he was employed or prevented him from receiving a promotion or other lateral transfer. *See Davis*, 245 F.3d at 1243 (finding no evidence of tangible harm where the record lacked evidence that plaintiff was denied a promotion or passed over for a job elsewhere). As for Plaintiff's contention that the write-ups affect future job prospects, in *Davis*, the Eleventh Circuit stated:

> [T]his kind of allegation—that the employer's criticism or negative evaluation may affect the employee's prospects—does little to advance [plaintiff's] claim even if true. Any job criticism or negative job review carries with it the possibility that the employee's future prospects may be prejudiced if that information is disclosed. A negative evaluation that otherwise would not be actionable will rarely, if ever, become actionable merely because the employee comes forward with evidence that his future prospects have been or will be hindered as a result.

*Id.* at 1243. Accordingly, because Plaintiff has failed to demonstrate that he suffered any tangible harm from the write-ups, he has failed to show that they constitute adverse employment action for the purpose of showing a *prima facie* case of discrimination. The Court does find, however, that Plaintiff's termination is adverse employment action. Thus, because the Court has already stated that it will consider Plaintiff's termination in its consideration of Plaintiff's race-based discrimination claim, Plaintiff has met the adverse employment action requirement of the *prima facie* case. Nevertheless, the Court agrees that Plaintiff has not established a *prima facie* case due to his failure to proffer a similarly situated comparator.

In order to determine whether a valid comparator has been presented, the Court must consider "whether the comparators were involved in, or accused of, the same or similar conduct and disciplined differently." *Beckles v. Federal Exp. Corp.*, No. 11-14283, 2012 WL 3932112, at *2 (11th Cir. Sept. 11, 2012) (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)). A plaintiff is similarly situated to another employee only if the "quantity and quality of the comparator's misconduct" are "nearly identical." *Johnson v. Miller Brewing Co.*, 341 F. App'x 477, 478 (11th Cir. 2009) (quoting *Burke-Fowler*, 171 F.3d at 1323). Importantly, "[t]he plaintiff and the employee she identifies as a comparator must be similarly situated "in all relevant respects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (citations omitted). This requirement that the comparator be "nearly identical to the Plaintiff" is in place "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with

oranges." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (citations omitted).

Nowhere in Plaintiff's rambling, disjointed response does the Court detect evidence of a proffer of a similarly situated comparator. (*See generally* Doc. 95.) Nevertheless, FRQ states that Plaintiff identified Matt Shemwell, Daniel Churchman, and Brendon/Brandon and Justin (last names unknown) as individuals FRQ disciplined. (Doc. 89-1 at 14.) Nothing about these individuals reflects that they are similarly situated to Plaintiff. (*See id.*) Nor does the record, in the absence of a similarly situated comparator, reflect any other evidence of discrimination to support Plaintiff's claims except for Plaintiff's unsubstantiated allegations that his race was a contributing factor in his termination. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 ,1092 (11th Cir. 2004) ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate *where no other evidence of discrimination is present.*") As such, the Court concludes that Plaintiff has not met his burden under the *prima facie* case and summary judgment is therefore appropriate as to Plaintiff's racial discrimination claim against FRQ.

### C. Hostile Work Environment

Plaintiff has also alleged that he was subject to a hostile work environment on the basis of his race.[2] "A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule,

---

[2] Plaintiff also alleges that the harassment was because of his age and gender. Because, however, the Court has concluded that Plaintiff's claims are limited to his allegations related to race, *see supra* p. 11, the Court will not consider any hostile work environment allegations related to age and gender.

and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Title VII is not meant to serve as "a general civility code." *Satchel v. Sch. Bd. of Hillsborough Cnty.*, 251 F. App'x 626, 630 (11th Cir. 2007) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). As such, to prove a prima facie case of hostile working environment, a plaintiff must establish that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based upon a protected characteristic (here, race); (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for said environment under either a theory of direct or vicarious liability. *Miller*, 277 F.3d at 1275.

A review of Plaintiff's claims reflects that he has failed to establish a *prima facie* case of a hostile work environment. While Plaintiff has shown that he is a member of a protected group, Plaintiff's evidence falls short of demonstrating any actionable harassment. At best, the Court construes Plaintiff's allegations as alleging only one specific act of "unwelcome harassment"—Plaintiff was written up because he did not finish a project. Plaintiff alleges that the project did not get completed because the coworker who was supposed to assist him did not show up for work.[3] (*See* Doc. 95 at 7; Doc. 95-1 at 4-5.) Plaintiff's write-up is, however, not accompanied by any evidence

---

[3] Plaintiff alleges no other instances of harassment other than generalized allegations of "unfair treatment, unfair opportunity and unfair termination," none of which suffice for the purpose of summary judgment in the absence of actual evidence of harassment.

showing that it would be sufficiently severe or pervasive to alter the terms or conditions of Plaintiff's employment.

To be actionable, the harassing conduct must satisfy both an objective and subjective component that dictates that the conduct "must result in both an environment 'that a reasonable person would find hostile or abusive' and an environment that the victim 'subjectively perceive[s] ... to be abusive.'" *Miller*, 277 F.3d at 1276. In evaluating the objective severity of the harassment, the Court considers, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Id.* By failing to demonstrate any of these factors as they relate to his one write-up, Plaintiff fails the objectiveness prong of the analysis. A one-time written reprimand does not constitute frequent conduct nor does it constitute conduct that would be considered "severe" to a reasonable person in the absence of evidence that it was undeserved or was accompanied by additional, more severe punishment. Moreover, there is no evidence to reflect that the instant written reprimand was physically threatening or humiliating or interfered with Plaintiff's ability to do his job. Simply put, the written reprimand for failure to finish the project seems to have offended Plaintiff, not because he denies that the project did not get finished, but because he felt that FRQ was reprimanding him for the absence of his coworker rather than reprimanding him for his (Plaintiff's) part in the failure to finish the project. Nonetheless, Plaintiff's objection to the written reprimand does not transform it into

actionable harassment. Thus, even if the Court assumes that Plaintiff sufficiently showed that the write-up was because of his race (Plaintiff has not made such a showing, to be clear), Plaintiff failed to meet the sufficiently severe and pervasive threshold of the *prima facie* case. Accordingly, FRQ is entitled to summary judgment as to Plaintiff's hostile work environment claim.

### D.   Retaliation Claim

In his response in opposition to FRQ's Motion for Summary Judgment, Plaintiff alleges that "filing the complaint with E.E.O.C. escalated the resent [sic] and/or hostile environment which is/was illegal by staff, supervisors as unprovoked and retaliation for Plaintiff Mason filing such." (Doc. 95 at 7.) FRQ contends that Plaintiff's retaliation claim is not properly before the Court because Plaintiff did not include any references to retaliation in his Complaint. (Doc. 89-1 at 17.) Though Plaintiff's pleadings have not always been a model of clarity, Plaintiff did, indeed, reference a retaliation claim at the end of his "Memorandum" attached to his Complaint. (*See* Doc. 1-2 at 9.) In the "Memorandum" attached to his initial complaint, Plaintiff alleged that "[t]here was retaliation . . . in regards to the matter as having opposed any practice prohibited by law and because [he] . . . filed a complaint." (Doc. 1-2 at 9.) Since FRQ did not raise any exhaustion issues regarding Plaintiff's retaliation claim and Plaintiff's retaliation claim was mentioned as part of his Complaint, the Court will address the merits of Plaintiff's retaliation claim.

Under Title VII, it is unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice . . . or

because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [42 U.S.C. § 2000e-3(a)]." *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 956 (11th Cir. 1997) (citing 42 U.S.C. § 2000e-3(a)). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: 1) she engaged in statutorily protected activity; 2) suffered an adverse employment action; and 3) the adverse action was causally related to plaintiff's protected activities. *Id.* at 959. Once "a plaintiff establishes a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. If the employer accomplishes this, the plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct." *See Jiles v. United Parcel Serv., Inc.*, 360 F. App'x. 62, 66 (11th Cir. 2010) (internal citations omitted).

FRQ concedes that Plaintiff engaged in protected activity when he filed his EEOC Charge and his federal complaint. FRQ disputes, however, that Plaintiff suffered an adverse action that was causally connected to his protected activity. Plaintiff executed his EEOC Charge on April 25, 2012 and filed this lawsuit on October 22, 2012. (Doc. 89-9 at 19; Doc. 1.) FRQ terminated Plaintiff's employment on January 22, 2013, following the January 12, 2013 incident involving Plaintiff and Lamar, the FRQ Guest Services Manager. (*Id.* ¶ 59.) The only adverse employment action that followed Plaintiff's EEOC Charge and Complaint was his termination on January 22, 2013. This incident, however, is not sufficiently close to his protected activity to satisfy the causal-link element.

In order to satisfy the causal-link element, "a plaintiff merely has to prove that the protected activity and the . . . [adverse] action are not completely unrelated." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (citations omitted). "A plaintiff satisfies this element if he provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse . . . action." *Id.* (internal quotations and citations omitted). "A 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case." *Id.* (citation omitted). The Supreme Court has made clear that for "mere temporal proximity" to be sufficient it "must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation omitted). In *Higdon*, 393 F.3d at 1220, the Eleventh Circuit further held that "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law."

Plaintiff alleges that the filing of his EEOC charge triggered an escalation in the "hostile work environment." (Doc. 95 at 7.) Plaintiff has not, however, identified any treatment in question, supported by evidence or otherwise, that would constitute adverse employment action. Plaintiff did not allege that his termination in January, which is adverse employment action, was done out of retaliation. Therefore, Plaintiff has failed to allege sufficient retaliatory adverse employment action to support his *prima facie* case. Even if the Court considers Plaintiff's termination in relation to his retaliation claims (though Plaintiff did not argue this), Plaintiff was terminated nine

months after the filing of his EEOC Charge and three months after the filing of his federal complaint. The Eleventh Circuit has concluded that in the absence of any other evidence of causation, a three-month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation. *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006); *see also, e.g., Hubbard v. Ga. Farm Bureau Mut. Ins. Co.*, No. 5:11-cv-290, 2013 WL 3964908, at *1 (M.D. Ga. July 31, 2013) (finding a three-month proximity, "without more," to be insufficient to "meet the 'very close' temporal proximity required to establish but-for causation"). Here, Plaintiff has presented no other evidence of causation, and, as such, the three-month gap between his last protected activity and his termination is insufficient to meet the causation requirement.

To the extent that Plaintiff's various pleadings can be read broadly to allege a claim that FRQ or its employees sought to interfere with Plaintiff's ability to obtain other employment, Plaintiff has failed to present evidence to support this allegation. Plaintiff also failed to present any evidence that anyone at FRQ had any contact with potential employers. Therefore, Plaintiff has failed to present any evidence to show any acts of retaliation. Accordingly, FRQ is entitled to summary judgment as to Plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 89) is **GRANTED**. It is hereby **ORDERED AND ADJUDGED** that Plaintiff shall take

nothing by his Complaint (Docs. 1, 32), and **JUDGMENT** shall be entered in favor of Defendants.

      **SO ORDERED**, this __3rd__ day of June 2014.


                          /s/ W. Louis Sands
                          **W. LOUIS SANDS, JUDGE**
                          **UNITED STATES DISTRICT COURT**